IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOSHUA HOSKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   20-cv-560-RJD |
| | ) | |
| WESLEY SHIRLEY, CHAD WALL, | ) | |
| DANIEL J. HARRISS, OFFICER BROCK, J. | ) | |
| RUETER, R. TOMSHACK, JOSEPH | ) | |
| DUDEK, KALE LIVELY, C. HECK, C. | ) | |
| SWISHER, G. HALE, SERGEANT GROVE, | ) | |
| C. ADAMS, BRIAN MILLER, and SETH | ) | |
| MERACLE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Joshua Hoskins, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit on June 12, 2020 pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville").

In his complaint, Plaintiff alleges Defendants Shirley and Tomshack came to his cell on May 11, 2020, and handcuffed him for transfer, explaining they had an officer file a false disciplinary ticket against him in retaliation for reporting correctional officer misconduct to his psychiatrist. Shirley injured Plaintiff while handcuffing him and walking him out of the cellhouse. Tomshack had instructed Shirley to pass along instructions to Plaintiff's new cellhouse that he was not to be sent for medical care, given access to showers, hygiene items, yard or laundry, and Shirley relayed that message. Brock, Harriss, and Wall all informed Plaintiff he

Page **1** of **12**

would not have access to these items and that he would not be fed, in retaliation for filing this lawsuit.   Wall instructed Harriss to further injure Plaintiff, which he did.

Plaintiff was seen in the Health Care Unit on May 12, 2020 by Defendant Rueter, a nurse. Plaintiff showed her his injuries, including bruising, swelling, and cuts on his wrists, but she refused to help, stating that she was retaliating for Plaintiff reporting misconduct to his psychiatrist.   Rueter also stated she would file a false disciplinary complaint against Plaintiff if he continued, and informed Plaintiff she had told several defendants that if they continued to deprive him of hygiene items, food and showers, she would ensure he received no medical care.

On May 18, 2020, Plaintiff informed Defendant Lively of Shirley's actions and his injuries.   Lively refused to obtain medical treatment for Plaintiff, and indicated he felt Plaintiff deserved it for filing complaints and grievances.   On May 19, 2020, Defendant Heck informed Plaintiff that he, Lively, Adams and several non-defendants had informed cellhouse staff not to take Plaintiff to the HCU to prevent documentation of his injuries, and that Heck was retaliating for Plaintiff filing grievances and lawsuits.

On May 27, 2020, Plaintiff was refused food, showers, hygiene items and access to medical care by Defendants Hale, Wall, Harriss, and Brock, who also refused to address a leak in his ceiling and mildewed mattress.   They told Plaintiff they were doing this in retaliation for Plaintiff filing grievances and a lawsuit.

On May 28, 2020, Plaintiff spoke with Defendants Adams, Dudek, and Miller, who informed Plaintiff they would continue not to feed him and deny him access to healthcare and sanitary necessities as retaliation for reporting misconduct to his psychiatrist.   This was later reiterated by Defendants Meracle, Swisher, and Grove.

Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he is proceeding on the following claims:

Count One:   Eighth Amendment claim for conditions of confinement related to personal hygiene items, showers, bedding and food against all Defendants between May 11 and May 28, 2020.

Count Two:   Eighth Amendment claim for excessive force against Shirly and Harriss.

Count Three: Eighth Amendment deliberate indifference to a serious medical condition against all Defendants between May 11 and May 28, 2020.

Count Four:  First Amendment retaliation claim against all Defendants[1].

(*See* Doc. 24).

Defendants filed motions for summary judgment that are now before the Court asserting Plaintiff failed to exhaust his administrative remedies prior to filing suit (Docs. 63 and 80).   For the reasons set forth below, the Motions are **GRANTED**.

## Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Jana Rueter (Doc. 63)

In her motion, Defendant Rueter explains that in his complaint, Plaintiff alleges he was seen in the health care unit on May 12, 2020, and he filed his complaint June 12, 2020.   Defendant Rueter asserts the Pinckneyville Grievance Log reflects that the Grievance Office received only two grievances from Plaintiff during this time, neither of which relate to Rueter or the claims against her.   In the first of these grievances, dated May 15, 2020, Plaintiff complains that C/O Brockett confiscated one of his pairs of shoes, even though he is allowed two pairs (*see* Doc. 64-2 at 16-17).   Plaintiff also filed a grievance dated May 26, 2020 complaining that he received a false disciplinary report issued by Lt. Heck on May 11, 2020 (*see* Doc. 64-1 at 18-19).   Defendant

---

[1] Defendants are Wesley Shirley, Chad Wall, Daniel Harriss, Officer Brock, Jana Rueter, R. Tomshack, Joseph Dudek, Kale Lively, C. Heck, C. Swisher, G. Hale, Sergeant Grove, C. Adams, Brian Miller, and Seth Meracle.

Rueter asserts these grievances are insufficient to exhaust against her as she is not named, and the grievances make no reference to any of her alleged actions at issue in this lawsuit.

Defendant Rueter acknowledges Plaintiff's claim set forth in his complaint that counselors Reid, King, and Brown told him they were not processing his grievances against staff members. Defendant Rueter points to Plaintiff's CHAMPS record, which shows that counselor Reid documented communications with Plaintiff 12 times from January 8, 2020 to January 26, 2021; counselor Rebecca King documented communications with Plaintiff 7 times from May 7, 2020 to March 12, 2021; counselor Tyler King documented communications with Plaintiff 13 times from December 2, 2019 to September 1, 2020; and counselor Brown documented communications with Plaintiff 12 times from February 11, 2020 to September 11, 2020 (*see* Doc. 64-4). Defendant Rueter argues Plaintiff can provide no evidence that counselors Reid, King, or Brown failed to process a single grievance he submitted; and, if anything, the CHAMPS records show the Pinckneyville Grievance Office processed 37 discrete grievances written by Plaintiff in 2020.

In response to Rueter's motion, Plaintiff asserts counselor Brown and other counselors told Plaintiff prior to the filing of this case they had no issues processing Plaintiff's grievances, but they would not process grievances that were "serious" in nature or that would get a staff member sued, suspended, or fired. Plaintiff asserts that because counselor Reid and other counselors refused to address the grievances against defendants in this case, he had no other avenues to take. Plaintiff cites his efforts to bring this issue to Judge Rosenstengel's attention in another case, 20-cv-395, but to no avail.

Plaintiff asserts the grievances mentioned by Defendant Rueter were processed because his complaints therein would not get a staff member sued, fired, or suspended. Plaintiff also asserts he could not attach the grievances he attempted to exhaust because they were not returned back to

him.

**Motion for Summary Judgment on the Issue of Exhaustion filed by Chad Adams, David Brock, Joseph Dudek, James Groves, Garrick Hale, Daniel Harriss, Charles Heck, Kale Lively, Seth Meracle, Brian Miller, Wesley Shirley, Charles Swisher, Robert Tomshack Jr., and Chad Wall (Doc. 80)**

Defendants Adams, Brock, Dudek, Groves, Hale, Harriss, Heck, Lively, Meracle, Miller, Shirley, Swisher, Tomshack Jr., and Wall also filed a motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.   In their motion, Defendants assert Plaintiff failed to exhaust a grievance related to the allegations at issue prior to filing his lawsuit on June 12, 2020.   Defendants assert Plaintiff's grievance records indicate he was able to successfully file and appeal grievances immediately before and after the period relevant to this case, noting grievances not concerning the issues in this lawsuit were submitted and dated May 5, May 15, June 17, July 6, July 14, August 3, and August 21, 2020.   Defendants argue Plaintiff filed his complaint just 32 days after the first allegation in his complaint, and fifteen days after the final allegation in his complaint.   Thus, Defendants assert that Plaintiff would not have known if his grievances would be processed or not because he filed suit before he allowed the facility 60 days to respond to the same.   Defendants make the point that Plaintiff does not contend the counselors refused to take the grievances, but only they would not process them.   Thus, Defendants contend Plaintiff did not give the counselors sufficient time to process any grievances he allegedly filed related to the allegations in this lawsuit.

In response to Defendants' motion, Plaintiff reiterates that he was told by counselors Reid and Brown they would only process grievances that were not serious and would not get a staff member sued, suspended, or fired.   Plaintiff asserts the grievances mentioned by Defendants were not grievances that would have been deemed "serious."   Plaintiff agrees that the grievances in the

record presented by Defendants do not mention Defendants' conduct, nor would they, because Reid and Brown were not processing the grievances relevant to his claims in this lawsuit and they would not be in the record because they were destroyed or not processed.

## Pavey Hearing

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on Defendants' motions on February 28, 2022.   At the hearing, Plaintiff testified he hand-delivered a grievance to counselor Reid on May 19, 2020.   This grievance detailed the incidents that occurred on May 11, May 12, and May 19, 2020 at issue in this lawsuit.   Plaintiff testified counselor Reid told Plaintiff he would not process it because he would not process any grievances related to suing another officer.   Plaintiff did not make a copy of this grievance.   Plaintiff testified he should have received a receipt for this grievance in one to two days.   Because he did not receive a receipt within the anticipated timeframe, Plaintiff testified he knew his grievance was not being processed.   Plaintiff later asked Reid about this grievance, and Reid indicated he did not know what Plaintiff was talking about.

Plaintiff testified he submitted a second grievance concerning the claims in this lawsuit to counselor Reid again in June 2020, to which Reid again failed to respond.

Jesse Reid also testified at the hearing.   Reid indicated that during the time relevant to the complaint he was a correctional counselor assigned to the segregation unit at Pinckneyville.   Reid explained that in this role he made rounds in the housing units to see if individuals needed materials, and he collected and responded to grievances filed by persons in custody.   Reid indicated that when he collected grievances in segregation, he would carry around a box and inmates would place their grievances in the box.

Reid recalled Plaintiff filing grievances while he was on rotation and testified that he

responded to these grievances. Reid testified he does not recall Plaintiff filing grievances complaining about staff member assaults. Reid also testified he has never discarded or destroyed a grievance, nor has he told Plaintiff he would not process grievances that are "serious" and would get other officers in trouble. Reid asserted all communications between he and Plaintiff are documented in Plaintiff's CHAMPS notes (cumulative counseling summary), as is the custom and practice as a counselor. Reid indicated he was not aware Plaintiff had lawsuits pending against other staff members.

Rebecca King, another correctional counselor at Pinckneyville during the relevant time, also testified at the hearing. Ms. King indicated she knew some of the named defendants in this case, but was not very familiar with them. Ms. King indicated a counselor can answer a grievance about staff assault, but will bring the grievance to internal affairs in order to respond. Ms. King testified she never told Plaintiff she would not process any grievances, and never heard any other counselor tell Plaintiff they would not process certain grievances.

Tyler King, another correctional counselor, testified at the hearing, indicating he also never told Plaintiff he would not process grievances and was not aware of any other counselor telling Plaintiff they would not process grievances. Mr. King testified that Plaintiff never complained to that his grievances were not being processed, and indicated he never destroyed or refused to process a grievance submitted by Plaintiff or any other individual in custody. Mr. King indicated the facility does not provide free copies of grievances or free mailing to the ARB. Mr. King testified he was familiar with "a lot" of the defendants in this action.

Margaret Madole, an ARB Chairperson, testified that the ARB receives grievances from prisoners that are mailed through the United States Postal Service. Madole indicated that if a grievance complains about a staff assault it needs to be handled by internal affairs.

Page **7** of **12**

At the hearing, the Court inquired as to whether Plaintiff would seek to have additional witnesses as set forth in his motion for the court to intervene (Doc. 89).   Plaintiff indicated he withdraws his request for additional witnesses.

## Legal Standards

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Exhaustion Requirements

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.   "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).   "[A] suit filed by a prisoner before

administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by

responding directly to the offender.   *Id.*   Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.   *Id.* at § 504.870.

## Discussion

Based on the evidence in the record and arguments of the parties, the Court finds Plaintiff failed to exhaust his administrative remedies as to all Defendants prior to filing this lawsuit.

Plaintiff does not rely on any grievances in the record to establish exhaustion; rather, he asserts he was thwarted in his efforts to exhaust relevant grievances because counselors at Pinckneyville refused to process the same.   Because he never received these grievances back from the counselor, Plaintiff asserts he is unable to submit them to the Court for review.   Based on his argument, in order to find Plaintiff exhausted his administrative remedies, the Court must credit Plaintiff's testimony concerning his efforts to submit grievances that were not processed.   The Court, however, finds Plaintiff's testimony to be disingenuous.

First, three counselors, Reid, King and King, all testified they never told Plaintiff they would not process certain grievances.   This testimony is all in contravention of Plaintiff's allegations concerning the processing of his grievances.   They also testified they never refused to process or discarded any grievance.   The Court notes these counselors are not defendants in this lawsuit and although they may have been acquainted with or knew some of the defendants, the Court finds that alone is insufficient to establish they would be motivated to act as Plaintiff alleges. Thus, the Court credits the testimony of Reid, King, and King.

Further, while the Court recognizes Plaintiff's testimony that counselor Reid and others told him they would not process grievances that would get officers sued, terminated, or suspended,

and acknowledge the difficulty Plaintiff would have in proving the same, there is simply nothing to corroborate this in the record that was not wholly created by Plaintiff. Notably, a review of Plaintiff's cumulative counseling summary wherein he had conversations with various counselors reflects no mention of the issues presented here from May 2020 to present (*see* Doc. 64-4). However, the Court points to an entry dated December 30, 2020 wherein counselor Micah Hallman indicated Plaintiff was seen at his cell. Hallman writes "Offender wanted to know why I was throwing his grievances away. I assured the offender that all grievances are processed according to policy and procedure. Offender then explained to me that he knew I was not throwing his grievances away but he wanted to make it look like I was for his lawsuit" (Doc. 64-4 at 7). Shortly thereafter, Plaintiff filed a grievance dated January 8, 2021 that he asked the Court to consider *after* his responses to Defendants' summary judgment were filed. In this grievance, Plaintiff sets forth a litany of unrelated issues, but mentions that he never received a response to his May 2020 grievance. Insofar as Plaintiff believes this corroborates his allegations concerning his efforts and how they were thwarted, the Court finds the opposite. This grievance was filed well after Defendants filed their motions and after he filed his initial responses to the same. In assessing the submission of this grievance in conjunction with counselor Hallman's December 30, 2020 counseling entry, the Court makes the logical conclusion that Plaintiff was making efforts to substantiate his "story" and lend credibility where there is none to a finding that counselors refused to process certain grievances.

In making this determination, the Court notes that Plaintiff has urged the Court through his various filings to take notice of certain decisions of other judges in this district or evidence he presented in other cases. Based on the record he has provided, the Court finds no evidence that is relevant to the specific issues and grievances in this case that could corroborate Plaintiff's

allegations.   Insofar as Plaintiff asks the Court to review certain cases and evidence he submitted without providing the Court the specific documents, the Court declines to engage in a such a fact-finding mission for Plaintiff[2].   Accordingly, based on the record before the Court, the undersigned does not credit Plaintiff's assertions that he was thwarted in his efforts to exhaust his administrative remedies.

<u>**Conclusion**</u>

Based on the foregoing, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Jana Rueter (Doc. 63), and the Motion for Summary Judgment on the Issue of Exhaustion filed by Chad Adams, David Brock, Joseph Dudek, James Groves, Garrick Hale, Daniel Harriss, Charles Heck, Kale Lively, Seth Meracle, Brian Miller, Wesley Shirley, Charles Swisher, Robert Tomshack Jr., and Chad Wall (Doc. 80) are **GRANTED**.   This matter is **DISMISSED WITHOUT PREJUDICE**.   The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 7, 2022**


*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

[2] The Seventh Circuit Court of Appeals has observed that "[j]udges are not like pigs, hunting for truffles buried in briefs."   *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).